FILED & ENTERED

MAR 25 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Remy        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Nicholas Davis | Case No.:  1:13-bk-10794-MT |
| | Adv No:    1:13-ap-01096-MT |
| Debtor(s). | |
| Sarah Cheiker, John F Lambert, Linda Russell | **MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff(s), | |
| v. | Date:         February 12, 2014<br>Time:        1:00 p.m.<br>Courtroom: 302 |
| Nicholas Davis | |
| Defendant(s). | |

On May 7, 2013, Plaintiff John Lambert, Jr. on behalf of Sarah Cheiker and Linda Russell, Esq. in her capacity as Conservator for Sarah Cheiker ("Plaintiffs"), filed this adversary proceeding against Debtor Nicholas Davis ("Defendant"). The complaint alleged causes of action under §§ 523(a)(2)(A), (a)(4), (a)(6) and §§ 727(a)(2), (a)(3), and (a)(5). [1]

---

[1] Unless otherwise noted, all code sections refer to Title 11, United States Code.

A related adversary case by these same Plaintiffs was also brought against another debtor, Jonathan Stevens ("Stevens") See Adversary Case no.13-01107. Similarly, the adversary complaint against Stevens alleged causes of action under §§ 523(a)(2)(A), (a)(4), (a)(6) and §§ 727(a)(2), (a)(3), and (a)(5). Summary judgment has been granted in that case on the § 523(a)(4), § 727(a)(2); and § 727(a)(5) claims.

Both adversaries involve the same facts, parties, and allegations of defendants' financial exploitation of an elderly woman named Sarah Cheiker ("Ms. Cheiker"). Ms. Cheiker is an 88-year old woman, currently residing in the Fryeburg Residential Care Center in Fryeburg, Maine. Ms. Cheiker suffers from Chronic Obstructive Pulmonary Disease, Atherosclerotic Cardivascular Disease, hearing loss, and visual impairment, among other ailments. On or about May 2, 2012, Linda Russell ("Russell") was appointed to be Cheiker's temporary conservator by the Oxford County Probate Court. On or about May 9, 2012, Russell, through her counsel, John Lambert ("Lambert"), filed a state court complaint against Barbara Davis, Nicholas Davis, Jonathan Stevens, and Amanda Stevens (the "State Court Action") See Ex. 1 to Plaintiffs' Ex. List (State Court Complaint). The state court complaint alleges, among other things, claims for negligence, breach of fiduciary duty, negligent infliction of emotional distress, intentional infliction of emotional distress, conversion, and improvident transfer. The facts surrounding the causes of action relate to alleged financial exploitation of Ms. Cheiker by the Davis' and Stevens'.

After extensive investigation, the Lincoln County Superior Court in Maine entered a Judgment and Commitment in State of Maine v. Nicholas Davis for a felony charge of Intentionally Endangering the Welfare of Dependent Person in violation of 17-A MRSA § 555(1)(B). Defendant pled nolo contendre and did not dispute the facts surrounding the charge. Defendant was found guilty and sentenced to three years of prison time, which was suspended in full, placed on probation for 2 years, and ordered to pay $5,000 as restitution for the benefit of Ms. Cheiker. See Ex. 17 (Judgment) and Ex. 20 (Transcript of Defendant's sentencing hearing on April 26, 2012) to Plaintiffs' Ex. List.

On or about February 07, 2013, Debtor filed a voluntary chapter 7 bankruptcy in this Court. Debtor listed solely $50.23 in cash on hand and a $650,000.00 unsecured non-priority claim for the debt relating to the State Court Action. See Schedule F.

Plaintiffs filed a Relief from Stay Motion seeking to continue the Maine State Court Action, which was granted. (Docket #18).

Plaintiffs have now moved for summary judgment under § 523(a)(4), § 727(a)(2); and § 727(a)(5) only. Defendant only responded to the § 727(a)(2) claim by stating that he transferred properties by quit claim deed to avoid foreclosure and that when Defendant Jonathan Stevens [sic] filed bankruptcy over ten months later, he did not own any real property and did not conceal any assets.

Defendant argues there are triable issues of material fact. Specifically, in the Statement of Genuine Issues, Defendant disputes five facts: #12, 13, 24, 36, and 37. Defendant disputes other facts on an evidentiary basis, but not as a factual statement (facts #3, 4, 7, 8, 9, 25). Defendant refers to an "Objection to Proffered Evidence, filed concurrently herewith," but no such document appears to have been filed or attached to the Opposition. (The Court notes that

this Opposition appears to be fundamentally identical to the opposition filed in response to the MSJ filed in the related adversary in the Stevens' case).

**Summary Judgment**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

The facts that Defendant identifies as "disputed" are not material or there is no evidence in support of defendant's assertions. Defendant has not provided documents or sworn statements to support its disputed facts. See Defendant's Opposition to Motion for Summary Judgment, Docket no. 18 ("Opposition"). In addition, Defendant failed to appear at the hearing held on February 12, 2014.

**§ 523(a)(4) – Defalcation**

A debtor is not entitled to discharge from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). To except a debtor from discharge for fraud or defalcation while acting in a fiduciary capacity under section 523(a)(4), a plaintiff must establish that a fiduciary relationship existed and that a defalcation occurred. In re Chapman, 125 B.R. 284, 286-86 (Bankr. S.D. Cal. 1991). The fiduciary relationship must have been created before the act of wrongdoing. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). The Supreme Court recently clarified the term, "defalcation" in Bullock v. BankChampaign, N.A., 133 S.Ct. 1754, 1759 (2013), holding that where there is no bad faith, moral turpitude or other immoral conduct, defalcation as used in 11 U.S.C. § 523(a)(4) requires an "intentional wrong." This includes not only conduct that the fiduciary "knows is improper," but also "reckless conduct of the kind that the criminal law often treats as the equivalent." Id. Thus, where actual knowledge of wrongdoing is lacking, conduct will be considered sufficiently reckless to constitute defalcation where the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his/her conduct will turn out to violate a fiduciary duty. Id. That risk must be of such a nature and degree that, considering the nature and purpose

of the actor's conduct and the circumstances known to him, its disregard involves a "gross deviation" from the standard of conduct that a law-abiding person would observe in the actor's situation. Id. at 1760. This standard requires a higher degree of intent or recklessness than that previously applied by the Ninth Circuit in In re Sherman, 658 F.3d 1009 (9th Cir. 2011) (*abrogated by* Bullock).

In this case, the Defendant admitted to having a fiduciary duty to Ms. Cheiker. During the sentencing hearing in the Lincoln County Superior Court Criminal Action ("Sentencing Hearing"), the State Attorney ("Mr. Wright") presented its case to the court as if it had gone to trial. See Ex. 21 to Plaintiff's Ex. List (Official Transcript, April 26, 2012 hearing), 10-14. Mr. Wright said he would have had Ms. Cheiker testify that Defendant and Ms. Davis took care of her and were directly responsible for her health and welfare, and that she did not have the opportunity or ability to care for herself financially, or buy necessities over the past three years. See Id. 13:5-12. Defendant was responsible for her feeding and medical care, and assumed that duty of care. Id. 13:13-14. Defendant said he was given guardianship over Ms. Cheiker by the courts in California. See Ex. 9 (Lincoln County Sherriff's Office Narratives/Hatch) pg. 3. In addition, Defendant had been granted power of attorney over her affairs. Id. 13:13-16 see also Ex. 1 to Plaintiff's Ex. List (State Court Complaint) pg. 7 ¶ 45 ( "The execution of the Uniform Statutory Form of Power of Attorney dated December 20, 2006 established [Defendant] as a fiduciary of Sarah Cheiker"). The power of attorney gave Defendant complete access to all of Ms. Cheiker's assets. At the Sentencing Hearing, Defendant answered in the affirmative that he had accepted responsibility for her care. See Ex. 21 to Plaintiff's Ex. List (Transcript in Barbara Davis sentencing hearing), 13: 24-25. The Maine court only narrowly focused on material endangerment (having to do with material support owed to Ms. Cheiker and the question of neglect) and not financial exploitation for purposes of Defendant's sentencing but the undisputed finding of a fiduciary duty was the same for either situation. See Ex. 20 to Plaintiff's Ex. List (Official Transcript, April 26, 2012 hearing), 37:15-18 and Ex. 21 pg. 28:12-15.

The undisputed facts, as detailed in the Maine record, demonstrate that Defendant maintained a fiduciary duty, and participated in reckless conduct that meets the heightened standard clarified in Bullock. Defendant was not only given power of attorney over Ms. Cheiker's assets, he was also aware that Ms. Cheiker depended on him for her care. It is undisputed that in July 2011, Defendant along with Stevens, drove Ms. Cheiker to the last location prior to being found, lied to the hotel manager that Cheiker was a middle-aged artist who wanted to be left alone, and left her there with very little food and resources. Based on the undisputed facts in the record, Defendant was aware that his conduct constituted a high risk to an elderly woman who suffers from medical problems.

The facts taken from Ms. Cheiker before her abandonment are discussed further as part of the 727 discussion that follows.

Accordingly, Plaintiffs' defalcation claim under § 523(a)(4) is granted.

///
///
///
///

**§ 727(a)(2)- Transfer of Assets**

A debtor shall be denied discharge if he has "transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed," property of the debtor within one year before the filing of the petition and with the intent to hinder, delay, or defraud a creditor. To establish a § 727(a)(2)(A) claim, plaintiff must prove "(1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997). "Both elements must take place within the one-year pre-filing period …" Id.

In this case, there were numerous admissions by Defendant in the reports written by police and FBI agents following the discovery of Ms. Cheiker in the hotel. Defendant has not submitted any evidence to contradict these prior statements. According to the reports, Defendant admitted that he liquidated Ms. Cheiker's assets, including at least $600,000 from the sale of her home, which he had reinvested in real estate in his god daughter's name [Amanda Stevens]. See Ex. 6 to Plaintiff's Ex. List (Lambert Declaration) pg. 4 ¶ 17. Defendant stated, "they invested approximately $600,000 in properties in Maine, California, New York and several other states". See Ex. 8 to Plaintiff's Ex. List (Lincoln County Sherriff's Office Narratives/ Hatch) pg. 3. It is uncontested that Stevens, using Ms. Cheikers money obtained from Defendant, purchased six different properties in Maine in 2010. See Statement of Material Facts ¶ 18-24 for the list of the properties and the purchase prices of the properties (collectively the "Maine properties"). The Maine properties were transferred to a Peter and Becky Robichaud on or about April 27, 2012 in lieu of foreclosure. See Ex. 10 (Warranty Deed) and Ex. 11(Quit Claim Deed) to Plaintiff's Ex. List. During this time, Defendant held on to the beneficial interest in the properties. He stated, "[t]hat on April 12, 2012, I had problems paying the mortgage on the properties I had. That facing foreclosure I voluntarily gave all the properties back to lender". See Opposition, attachment no. 2 (Declaration of Defendant Nicholas Davis) ¶ 9. Thus, Defendant, acting in concert with Stevens, admitted to being involved with the transfer of properties to the lender, the Robichauds, and he provided no accounting of any of the funds invested or lost in any of the properties.

Defendant permitted the transfer of the Maine properties within one year of filing for bankruptcy but did not include these properties in his Statement Of Financial Affairs ("SOFA"). In addition, Defendant listed "None" for all property transferred within two years immediately preceding the commencement of his bankruptcy (paragraph 10 of Defendant's SOFA), despite the transfers in April 2012. Although Defendant claims that he filed bankruptcy over ten months after the transfer, it is still within the one-year time frame of § 727(a)(2).

The evidence is uncontroverted that Defendant liquidated Ms. Cheikers assets, and then transferred the money to Stevens, who purchased the six Maine properties and transferred them to the Robichaud's within one year of his petition date. Defendant admitted having beneficial interest, even though the properties were not in his name. He then failed to disclose the Maine properties and the criminal action against him in his bankruptcy petition. The Defendant proffered no explanation or accounting as to the value of the Maine Properties he transferred, stating only that they were facing foreclosure. He has been silent concerning any property in New York, or California that he admitted in earlier statements. The only reasonable inference to

be made from such non-disclosure is an intent to hinder, delay, or defraud creditors. Thus, given the nature of the nondisclosures, Defendant permitted the transfer of the Maine properties with such intent.

Accordingly, Plaintiffs' § 727(a)(2)(A) claim is granted.

**§ 727(a)(5)- Failure to Explain Losses**

A debtor is denied a discharge if the debtor "failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities." § 727(a)(5). Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets. Retz v. Samson (In re Retz), 606 F.3d 1189, 1193 (9th Cir. 2010). Whether a debtor has satisfactorily explained a loss of assets is a question of fact. A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under 11 U.S.C.S. § 727(a)(5). Id.

Here, Defendant lists $50.23 cash on hand in Schedule B and over $686,000 in liabilities, all of which are unsecured. Defendant however, did not dispute that he had control of Ms. Cheiker's assets, including $600,000 from the sale of her home, which was reinvested in the name of Jonathan and Amanda Stevens. It is undisputed that Stevens purchased six properties in Maine, in his name and Amanda Stevens' name, in 2010. It is undisputed that these properties were granted back to the Robichauds in April 2012. The only response by Defendant to these facts is that he was having difficulty in paying the lender, who retained a mortgage on the properties, and that he had to surrender the properties in lieu of foreclosure. See Supra Declaration of Nicholas Davis, ¶ 9.

Defendant's response gives little information to the Court as to what happened to the $600,000 that was transferred to Mr. Stevens' name and is insufficient as a matter of law. With respect to the property transactions, Defendant has presented no information as to how much of the $600,000 actually went into the properties. According to Maine public records, Stevens spent $590,000 to purchase at least 5 properties. See Ex. 1 to Plaintiffs' Ex. List (State Court Complaint) pg. 5. No information, however, was presented in Defendants bankruptcy petition, or opposition to the motion for summary judgment as to the values of the properties, what sort of down payments were made, or how much was financed by the Robichauds or other sources. Although, the Robichauds' retained a mortgage in the properties, no information or documentation was provided by the Defendant as to the note or obligation secured by the mortgage, or any payments made on any such obligation. The April 2012 grant deed states that the transfer was made from the Stevens to Robichauds "for consideration paid". It is not clear if that consideration was just in lieu of foreclosure or some other form of consideration. It was the Defendant's duty to provide an explanation in his response.

///
///

When a creditor brings an objection under section 727(a)(5), the debtor must be prepared to respond with specific information to adequately explain the loss of assets. A debtor cannot omit information from his schedules and force the trustee and creditors to search through his paperwork to determine what happened to assets. Rather, the debtor has an affirmative duty to provide specific information when asked. Once the Plaintiffs demonstrated that Davis did not have sufficient explanations as to losses of his assets, it was up to Davis to provide countering evidence to establish the existence of a genuine issue of material fact.

In this case, no accounting was submitted. Thus, Defendant has failed to explain what happened to the $600,000 taken from the sale of Ms. Cheiker home, not to mention any other assets stolen from her. The suggestion that the money was all abandoned to the Robichauds is an unsatisfactory explanation and not supported by anything other than a conclusory statement. The materials provided raised more questions about what happened to the money than they answered.

Accordingly, Plaintiffs' § 727(a)(5) claim is granted.

Date: March 25, 2014

Maureen A. Tighe
United States Bankruptcy Judge